(29 Misc. Rep. 258.)

## JERMAIN v. SHARPE et al.

(Supreme Court, Special Term, Rensselaer County. October, 1899.)

1. MORTGAGES — FORECLOSURE SURPLUS — MORTGAGE ON LIFE ESTATE — LIFE INTEREST—GROSS.

     Under Sup. Ct. Rule 70, providing that a life tenant may consent to accept a gross sum representing the value of his interest in money subject to such estate in lieu of annual interest or income arising therefrom, an assignee of a mortgage given on land, by a life tenant may be allowed, without such tenant's consent, to take such gross sum from a surplus arising out of a sale of the fee under a paramount mortgage, since the inferior mortgagee by his mortgage took the life tenant's interest in the land, with the same rights the life tenant might have exercised over the land or the surplus.

2. SAME—REMAINDER—IMPAIRMENT.

     The right of a life tenant to take a gross sum instead of the annual income arising from money subject to a life estate is not affected by the fact that the remainder estate is to go to unborn children, since the exercise of such right is not, in equity, an impairment of the estate in remainder.

Action by James B. Jermain against George N. Sharpe and others. To a referee's report denying the application of plaintiff's assignee to be allowed a sum in gross in lieu of a life estate in money, the assignees except. Exceptions sustained.

The following is the report of Lewis B. Hall, referee:

The facts are so numerous and intricate that I will not repeat them. The main question is whether unpaid assignees of a mortgage, whose lien covered the Jacob Sharpe farm and the Barringer farm, have any rights in a surplus resulting from the sale in this action of the Jacob Sharpe farm (although the Barringer farm is unsold, and is otherwise unincumbered) as against Elizabeth S. and Chester B. Craver, the life tenants of the Jacob Sharpe farm. The life tenants assert that a referee in surplus proceedings has no power to pass on a contested lien, and that he can only find the amount due the claimants, and for this they cite Institution v. Osley, 4 Hun, 657. That case was overruled in Kingsland v. Chetwood, 39 Hun, 602, and seems to be in direct conflict with Bergen v. Carman, 79 N. Y. 146; Fliess v. Buckley, 90 N. Y. 286; Bank v. Selye, 83 Hun, 282, 31 N. Y. Supp. 921; Wolfers v. Duffield, 72 Hun, 637, 25 N. Y. Supp. 374, 1122; and Albro v. Blume, 5 App. Div. 309, 39 N. Y. Supp. 215. I think the referee has jurisdiction.

The life tenants further insist that, as the prior mortgages, foreclosed by J. B. Jermain, were foreclosed after the death of Bernard U. Sharpe, the mortgagor, the resulting surplus moneys are to be regarded as real estate belonging to the testator. This was so held in Dunning v. Bank, 61 N. Y. 497, Fliess v. Buckley, 22 Hun, 551, and Felts v. Martin, 20 App. Div. 60, 46 N. Y. Supp. 741, and seems to be the settled law.

They further claim that, as the consideration of the bond and mortgage upon which the claimants McClure et al. rely, was the borrowing of the principal sum ($3,000) for the purpose of paying off the testator's annuity to his widow, and as this annuity was charged only to the extent of one-quarter upon each of the four farms, the life tenant Elizabeth S. Craver, who executed the bond for the whole sum, and who also executed the mortgage without any limitation as to the amount of her liability thereon, is really liable for only one-quarter of the principal, or $750, and stands as surety as to any sum beyond that; and also that, as the Barringer farm, still unforeclosed, was also liable for one-quarter of the annuity, it cannot be determined in this proceeding what the liability of Elizabeth S. Craver is. As to the action brought by Elizabeth S. Craver against James B. Jermain, against her son, Chester B. Craver, the other life tenant, and certain other persons, to attack the validity of the bond and mortgage under which the assignees McClure et al. now claim, the life tenants assert that the decision therein, declaring the bond and mortgage valid, is not binding here, because the relative rights in the surplus were not determined by the decision, and also because the trustee and some of the remaindermen, to whom the Barringer farm was devised,—that is to say, John S. Myers, trustee, and the children of Flora Lape, afterwards Cheney,—were not parties thereto. It is also asserted that the devise to Elizabeth S. Craver and Chester B. Craver for life, and, after their death, to the children and issue of Chester B. Craver (now unmarried), if any should survive him (subject to the payments directed to be made by Elizabeth S. Craver as the controlling life tenant), creates a contingent remainder, and also grants to the life tenants an estate upon condition; and it is further claimed that they violated this condition by mortgaging their estates to pay a gross sum in order to discharge the annuity of the widow of the testator, and it is claimed that they thereby enabled James B. Jermain, or his assignees, to forfeit the estate of the unborn or contingent remainder-men,—that is to say, the possible lawful issue of Chester B. Craver. As to this last contention it may be said that the prior mortgages, whose foreclosure by James B. Jermain, assignee, necessitated the sale of the Jacob Sharpe farm, were given by Bernard U. Sharpe in his lifetime, and that, therefore, Bernard U. Sharpe could devise only what he had left; and that, consequently, when James B. Jermain foreclosed his prior mortgages, the rights of the life tenants Elizabeth S. Craver and Chester B. Craver in the land itself were necessarily and properly cut off. I think also that under the terms of the grant there was no estate upon condition, but merely a provision that certain payments were to be made, provided the life tenants enjoyed the use. As to the nature of the remainder, I deem it contingent, and that its vesting is dependent upon the marriage of, and the birth of lawful issue to, Chester B. Craver. Manice v. Manice, 43 N. Y. 374; Purdy v. Hayt, 92 N. Y. 456; Mc-

Gillis v. McGillis, 154 N. Y. 540 49 N. E. 145. As to the contention that the Barringer farm must be sold before it can be determined how much is due to the claimants McClure et al., it was held in Quackenbush v. O'Hare, 129 N. Y. 485, 29 N. E. 958, that in surplus money proceedings the party having the first lien upon the fund cannot be deprived thereof, on the application of subsequent claimants, upon the ground that his lien extends to other property which is sufficient to satisfy his entire claim; that the equitable rule applicable where a creditor has a double fund, to which he may resort for satisfaction of his debt, and another creditor has only one of these funds, which requires the first creditor to resort primarily to that fund over which he has exclusive control, did not apply. It is also held in Fliess v. Buckley, 90 N. Y. 286, that an action is not maintainable by a junior mortgagee to reach surplus moneys arising on a sale in the foreclosure of the senior mortgage; that, notwithstanding the foreclosure, the junior mortgage continues a lien, and as such follows the surplus; and that the remedy of the junior mortgagee is to enforce his claim thereto in the court. which rendered the judgment of his foreclosure. It is also to be observed that in this case the Jacob Sharpe farm was, in any event, liable for one-quarter of the mortgage debt of $3,000, which paid the widow's annuity, and that the Barringer farm is primarily liable for another quarter, and that both have not been relieved from these burdens. As to the other half of the $3,000, which freed the Conrad Sharpe and home of Harris farms from the widow's annuity, the Jacob Sharpe farm and the Barringer farm stand as sureties, and until one of them has paid more than its share it is not entitled to contribution or subrogation as against the other.

The situation, then, is this: That the claimants McClure et al. hold a mortgage, which, in the action brought by the life tenant Elizabeth S. Craver against James B. Jermain et al., and to which Chester B. Craver, the other life tenant, then of full age, was a party defendant, has been declared valid, and a lien upon the surplus moneys, as well as upon the Barringer farm. The testator gave to these life tenants the income of the Jacob Sharpe farm, subject to certain payments to be made by them. He did not direct nor intend that the income should accumulate. Chester B. Craver's expectation of life at 27 years of age is something over 13 years. He may never marry, and, if he does, may not have lawful issue,—an event not absolutely determinable until his death. Because this remainder is contingent, are these claimants to be postponed, and the life tenants to continue to enjoy the estate? It seems to me that the claimants are at least entitled to be paid the income of the original amount of the surplus ($2,870.99) during the joint lives of Elizabeth S. Craver and Chester B. Craver and the life of the survivor of them, provided, however, that Chester B. Craver shall pay no more than $750, with interest from March 31, 1888; and, further, that these claimants are presently entitled to be paid the accrued income now in the hands of the county treasurer. The unborn contingent remainder-men cannot be injured by such a course. It is true that to the action of Elizabeth S. Craver, the trustee of the Barringer farm and the children of Flora Lape, afterwards Cheney, were not parties, but they had no interest in this surplus, and this proceeding does not affect the Barringer farm, while any payment made herein would probably discharge the Barringer farm pro tanto. I also consider that the trust as to that farm is void, as dependent upon three lives, and that Jacob S. Myers, trustee, has no title or standing.

The claimants McClure et al. assert that they have a right to take a gross sum, representing the value of the life estates of the life tenants. Rule 70 of the general rules of practice provides that whenever "a party, as tenant for life, or by the curtesy, or in dower" is entitled to the annual interest or income of any sum paid into court, "if, such party is willing and consents to accept a gross sum in lieu of such annual interest or income for life, the same shall be estimated" in the manner provided. Can mere creditors, holding a lien consisting of a bond, not sued upon, and of a mortgage (on life estate) never foreclosed, and now cut off, be deemed "a party, as a tenant for life," entitled to the annual income of these surplus moneys, in such a sense that the creditors can "consent" to accept a gross sum in lieu of the annual interest or income for lives, where the life tenants themselves not only do not consent, in writing or otherwise, but expressly object, to such a course? I think not. In Re Camp, 126 N. Y. 377, 27 N. E. 799, a father had, as tenant by the curtesy, a

life interest in a fund resulting from the sale of real estate, and a surrogate and his referee undertook to compute the value of that interest, and to make the father account, as guardian to one of his children, for the child's proportionate share of the balance. Upon the point now involved the court said: "Holding, as we do, that the appellant [father] had a life estate in the fund, we do not know of any power in the referee or the surrogate to compute its value, and deduct the gross sum arrived at from the amount of the original fund. The appellant [father] has never consented to any such computation and deduction, and there is no statute, that we are aware of, which vests the right in the court to compel him to consent. Without his consent, and in the absence of such statute, it cannot be done." See In re Zahrt, 94 N. Y. 605, that such a right is never absolute, and is at most discretionary with the court. The claimants McClure et al. also seem to insist that they have a right to sell on execution or otherwise the right, title, and interest of the life tenants in the fund. But the tenancy is dependent on the lives of both life tenants, while one of them —Chester B. Craver—is liable to pay no more than $750, with interest from March 31, 1888. The surplus moneys must, therefore, represent some amount coming to him. I am unable to think of any method of sale—a sale at which the claimants McClure et al. would probably be the only bidders—which would not have the practical effect of making Chester B. Craver pay more than he should. The claimants McClure et al. also insist that this decision that they are entitled only to the accrued and accruing income of the fund will make it difficult, if not impossible, for them, in an action to foreclose their mortgage as against the Barringer farm, to ascertain or state how much is still due on the mortgage. But the children of Flora Lape, afterwards Cheney, were not parties to the action of Elizabeth S. Craver in which the bond and mortgage of the claimants McClure et al. was declared a valid lien, and it seems to me evident that defenses may be available to the children of Flora Lape, afterwards Cheney, which are not possible to Elizabeth S. Craver and Chester B. Craver; and I think I cannot consider the point whether this decision may embarrass the further proceedings of the claimants McClure et al. against the Barringer farm.

The request of the claimants McClure et al. that the referee charge the costs, disbursements, and referee's fees of this proceeding against the fund in a manner stated is denied. I understand that a referee, appointed under section 1015 of the Code of Civil Procedure, has no power over costs, and that they must be awarded by the court. Anderson v. E. de Braekeleer & Co., 25 Misc. Rep. 343, 55 N. Y. Supp. 721.

The fact that the life tenants, by the terms of the mortgage, conveyed a fee when they had only life estates, is not material, as their conveyance passed whatever estates they had. Thompson v. Simpson, 128 N. Y. 270, 28 N. E. 627.

I think the claimant J. Albert Cipperly, as a subsequent mortgagee of the share of Elizabeth S. Craver, has no rights in the surplus which can prejudice the prior claim of the claimants McClure et al.

Learned Hand, for claimants.

J. A. Cipperly, for life tenants.

EDWARDS, J. I am of opinion that the report of the referee should be confirmed, except as to the fourth and sixth conclusions of law, wherein he finds that the demand of the claimants to withdraw from the fund the gross value of the life estates should be denied, and that only the annual income should be paid to them. But for the mortgage lien of the claimants, there could be no doubt of the right of the life tenants, Elizabeth S. Craver and Chester B. Craver, to elect to take a gross sum representing their estates, and I see no reason why the court, in the exercise of its discretion, should not, in that case, direct the payment to them of such sum. The learned referee is of opinion that the claimants have not the legal right to elect to take such sum against the objec-

tions of the life tenants. I think that this right of election passed to the mortgagee as an incident of his mortgage lien, and the life tenants are not in a situation to object to the exercise of such right by the claimants, who are the assignees of the mortgage. It is a right which may be transferred either by the voluntary act of the life tenant or by operation of law. He may convey his estate, and his successor in interest takes it with the same rights which the grantor might have exercised; or he may be devested of his estate against his will, and his successor takes his rights with his interests in the property. A receiver in proceedings supplementary to execution is vested with the right, against the objection of the life tenant, to consent to accept a gross sum in lieu of the life estate of the judgment debtor in the proceeds of the sale in an action of partition. Wood v. Powell, 3 App. Div. 318, 38 N. Y. Supp. 196. So, also, the life tenant may mortgage his estate; and I think that this right to elect or consent passes to the mortgagee to enable him to realize the value of his security out of the land or its proceeds whenever it becomes necessary to enforce his lien. The rights which the life tenant otherwise might have exercised then become available to the mortgagee. I think that the claimants are, within the meaning of Sup. Ct. Rule 70, parties who may consent to accept a gross sum in lieu of annual interest or income for life. The referee, in his opinion, cites, as authorities for his conclusion, In re Camp, 126 N. Y. 377, 27 N. E. 799, and In re Zahrt, 94 N. Y. 605. In the former case the court held that one having a life estate in a fund, the proceeds of land, and who was guardian of the remainder-man, could not be compelled, on an accounting, at the instance of the remainder-man, to accept a gross sum in lieu of his annual income. That was not a case where the life tenant was electing to take a gross sum, but where the remainder-man was attempting to compel him to accept such sum against his objections. In Re Zahrt, supra, the court simply held that a person is not absolutely entitled to a gross sum in lieu of the annual income, but whether or not he shall have it rests in the discretion of the court, and under the particular circumstances of that case it was proper that it should be denied. I do not think that either of those cases is authority for the contention that the mortgagee of a life tenant, having a lien upon the surplus fund, has no right to elect to take a gross sum against the life tenant's objection.

It is contended by the counsel for the life tenants that the court has no power to permit the withdrawal of a gross sum in lieu of the income, for the reason that the persons entitled to the remainder are uncertain, may be the unborn children of Chester B. Craver, and are not represented in this action. I think a sufficient answer to this objection is that the right to elect or consent to accept a gross sum is exclusively the right of the life tenant. It does not depend upon, nor is it any way affected by, the wishes of the remainder-man. It may be exercised by the life tenant without the consent and against the objection of the remainder-man. The counsel for the life tenants further contends that the court cannot permit an impairment of the estate of the remainder-men by the withdrawal

of a gross sum from the fund. The answer to this is that the withdrawal of such a sum is not, in equity, deemed to be an impairment of the estate of the remainder-men. The theory upon which a court of equity permits a life tenant to take a gross sum in lieu of his estate is that such sum is the equitable value of his estate, and that what is left is the equitable value of the estate of the remainder-man. The fund remaining after the withdrawal of the value of the life estate, with the accumulation of interest, will be equal, at the time of the death of the life tenant, to the corpus of the fund to which the remainder-man is entitled. The court ascertains as accurately as possible the present value of the estate of both the life tenant and of the remainder-man, and neither is deemed to be impaired by the separation. The remainder-man takes his estate subject to this right of election in the life tenant. Although the right is not an absolute one, it is one which the court, in its discretion, always permits the life tenant to exercise, when no equitable reasons to the contrary exist. I can see no reason in this case why the life tenants, if their estates were unincumbered by the mortgage, should not be permitted to accept a gross sum from the fund; and, as the estates of the remainder-men could not be differently affected by granting such permission to the claimants, I think that it should be granted. As the court has before it, on this motion, all the data from which the value of the life estates of Elizabeth S. Craver and Chester B. Craver can be ascertained, and also the amount for which each is liable on the mortgage, the calculations will be made by the court on the settlement of the order, on notice, and the question of costs will then be determined.

Ordered accordingly.